UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.   CASE NO.   8:16-cr-243-T-23-AEP
                8:17-cv-2475-T-23-AEP

FELIX J. DE LA CRUZ VALVERDE
_____/

## ORDER

Valverde moves under 28 U.S.C. § 2255 to vacate and challenges the validity of his conviction for conspiracy to possess with intent to distribute cocaine while on board a vessel, for which he is imprisoned for 135 months. Valverde contends he received ineffective assistance of counsel.

## I. BACKGROUND

Under a plea agreement Valverde pleaded guilty to conspiracy to possess with intent to distribute five kilograms or more of cocaine while on board a vessel subject to the jurisdiction of the United States in violation of 46 U.S.C. §§ 70503(a) and 70506(a) and (b) and 21 U.S.C. § 960(b)(1)(B)(ii). Valverde admitted these facts in his plea agreement (Crim. Doc. 25 at 18–19):

> In or about May 2016, the defendant was a knowing and willing participant in a plan to smuggle more than five kilograms of cocaine by sea.
>
> On May 17, 2016, a patrol aircraft detected a go-fast vessel (GFV) in the Eastern Pacific Ocean traveling north at a high speed approximately 260 nautical miles north of the Galapagos Islands in international waters. All three defendants were

> onboard. A Coast Guard cutter was diverted to intercept the GFV and the defendants aboard the GFV were observed jettisoning packages.
>
> The Coast Guard was granted permission to conduct a right of visit boarding to include the use of warning shots and disabling fire. After warning shots were ineffective, disabling fire was employed and the GFV came to a stop. . . .
>
> The boarding team observed no flag or homeport on the hull. There were also no registration documents onboard the GFV. The crew claimed Ecuadorian nationality, but the Ecuadorian government could neither confirm nor deny nationality of the vessel and the GFV was subsequently treated as a vessel without nationality subject to the jurisdiction of the United States.
>
> Thirty bales were recovered during the interdiction. Field-testing of the contraband was positive for the presence of cocaine. The amount of cocaine recovered was at least five kilograms.

Valverde did not appeal, but he timely moves *pro se* to vacate his conviction and sentence under 28 U.S.C. § 2255. Valverde asserts six claims of ineffective assistance of counsel.

## II. **STANDARD OF REVIEW**

"[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (*en banc*) (quoting *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994)). As *Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998), explains, *Strickland v. Washington*, 466 U.S. 668 (1984), governs an ineffective assistance of counsel claim:

> The law regarding ineffective assistance of counsel claims is well settled and well documented. In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the

> Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims. According to *Strickland*, first, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052.

*Strickland* requires proof of both deficient performance and consequent prejudice. *Strickland*, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims*, 155 F.3d at 1305 ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds."). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." 466 U.S. at 690. *Strickland* requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." 466 U.S. at 690.

Valverde must demonstrate that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." 466 U.S. at 691–92. To meet this burden, Valverde must show "a

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694.

*Strickland* cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." 466 U.S. at 690–91. Valverde cannot meet his burden merely by showing that the avenue chosen by counsel proved unsuccessful.

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial . . . . We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220–21 (11th Cir. 1992); *accord Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable . . . . [T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'") (*en banc*) (quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)); s*ee also Jones v. Barnes*, 463 U.S. 745, 751 (1983) (counsel has no duty to raise a frivolous claim).

### III. <u>GROUNDS ONE AND FIVE</u>

Grounds One and Five are premised on Valverde's mistaken assertion that the United States lacked jurisdiction to detain, arrest, charge, and sentence him. In Ground One, Valverde contends that counsel was ineffective for not objecting to the indictment on "due process grounds" for lack of jurisdiction. In a related claim at Ground Five, Valverde contends that counsel was ineffective for "fail[ing] to [move] for a determination of subject matter jurisdiction."
(Civ. Doc. 1 at 4 and 9–10)

"Jurisdictional issues arising under [the Maritime Drug Law Enforcement Act ("MDLEA")] are preliminary questions of law to be determined solely by the trial judge." 46 U.S.C. § 70504(a). "[F]or a district court to have adjudicatory authority over a charge that a defendant conspired to violate the substantive crime defined in the MDLEA, the Government must preliminarily show that the conspiracy's vessel was, when apprehended, subject to the jurisdiction of the United States." *United States v. Iguaran*, 821 F.3d 1335, 1336 (11th Cir. 2016) (alterations omitted).

"Parties may not stipulate jurisdiction. Parties may, however, stipulate to facts that bear on [a court's] jurisdictional inquiry. A court's task is to determine whether the stipulated facts give rise to jurisdiction." *Id.* at 1337 (citations and alterations omitted) (remanding for a subject matter jurisdiction determination because the defendant's plea agreement and presentence investigation report were devoid of facts that would establish federal subject matter jurisdiction).

The MDLEA's definition of a "vessel subject to the jurisdiction of the United States" includes "a vessel without nationality." 46 U.S.C. § 70502(c)(1)(A). A "vessel without nationality" includes "a vessel aboard which the master or individual in charge makes a claim of registry and for which the claimed nation of registry does not affirmatively and unequivocally assert that the vessel is of its nationality." *Id.* § 70502(d)(1)(C).

Valverde admitted in his plea agreement (1) that he was on board a vessel without a flag or registration documents, (2) that the crew claimed Ecuadorian nationality, and (3) that the Ecuadorian government could neither confirm nor deny the vessel's nationality. (Crim. Doc. 25 at 18–19) He confirmed these admissions at his plea hearing. (Crim. Doc. 55 at 46) At sentencing Valverde stipulated to the factual recitation in both the plea agreement and the presentence report. *See United States v. Wade*, 458 F.3d 1273, 1277 (11th Cir. 2006) ("It is the law of this circuit that a failure to object to allegations of fact in a PSI admits those facts for sentencing purposes."). Relying on the stipulated facts, the district court "found as a fact" that "this vessel was located in international waters at the time of the interdiction . . . , traveling north at a high speed, approximately 260 nautical miles north of the Galapagos Islands in international waters." (Crim. Doc. 65 at 5–6)

The district court's factual finding, which was based on Valverde's factual admissions, established both the Coast Guard's authority to intercept and board Valverde's vessel and the district court's jurisdiction to adjudicate and to impose sentence. If counsel had asserted a jurisdictional objection, such an objection would

have lacked merit because "the failure to raise nonmeritorious issues does not constitute ineffective assistance." *Bolender v. Singletary*, 16 F.3d 1547, 1573 (11th Cir. 1994); *see also Brewster v. Hetzel*, 913 F.3d 1042, 1056 (11th Cir. 2019) ("Defense counsel . . . need not make meritless motions or lodge futile objections."); *Freeman v. Attorney Gen.*, 536 F.3d 1225, 1233 (11th Cir. 2008) ("A lawyer cannot be deficient for failing to raise a meritless claim."). Consequently, Valverde demonstrates neither that counsel was ineffective for not asserting a meritless jurisdictional challenge nor that counsel's performance was prejudicial.

## IV. <u>GROUNDS TWO AND THREE</u>

In Ground Two Valverde asserts that counsel was ineffective for not moving to suppress the Coast Guard's "illegal boarding, excessive force, and seizure of evidence and persons." In a related claim at Ground Three, Valverde asserts that counsel was ineffective for not objecting to the Coast Guard's destruction of unidentified, "potentially exculpatory evidence." (Civ. Doc. 1 at 6–7).

Valverde waived these claims when he knowingly and voluntarily pleaded guilty. At the plea hearing Valverde acknowledged the "valuable constitutional rights" he waived by pleading guilty, including "any objections as to how the charges were brought against [him] or as to how the evidence was gathered in [his] case[.]" (Crim. Doc. 55 at 39–42) "A defendant who enters a plea of guilty waives all nonjurisdictional challenges to the constitutionality of the conviction[.]" *Wilson v. United States*, 962 F.2d 996, 997 (11th Cir. 1992).

Also, Valverde demonstrates neither deficient performance nor prejudice. "[T]he Coast Guard may properly stop and board a foreign vessel in international waters . . . if it has a reasonable suspicion that the vessel is engaged in smuggling contraband into the United States." *United States v. Reeh*, 780 F.2d 1541, 1544 (11th Cir. 1986) (explaining that reasonable suspicion depends on the totality of the circumstances and an officer is entitled to assess the facts in light of his experience in detecting illegal smuggling). The Coast Guard observed Valverde and the crew jettisoning packages from a vessel located in international waters. (Crim. Doc. 25 at 18) This fact, which Valverde admitted in the plea agreement and confirmed at the plea hearing, establishes the Coast Guard's reasonable suspicion that the crew was smuggling contraband. Additionally, Valverde cannot challenge the seizure of the cocaine because he and the other crewmen abandoned the cocaine when they threw it overboard. *See United States v. Tinoco*, 304 F.3d 1088, 1117 (11th Cir. 2002) (ruling that the defendants "effectively abandoned the contraband and thus have no Fourth Amendment standing to challenge the seizure," when the Coast Guard retrieved the cocaine after the defendants threw it into the ocean).

Valverde's claim that counsel was ineffective for not objecting to the destruction of unidentified, potentially exculpatory evidence lacks merit. "In order to show that the loss of evidence by the government constitutes a denial of due process, the defendant must show that the evidence was likely to significantly contribute to his defense." *United States v. Revolorio-Ramo*, 468 F.3d 771, 774 (11th Cir. 2006) (ruling that the Coast Guard's destruction of an unseaworthy vessel did

not violate the defendant's rights because any potentially exculpatory evidence would not have significantly contributed to his defense); *United States v. Lopez-Hernandez*, 864 F.3d 1292, 1305 (11th Cir. 2017) (ruling that the Coast Guard's destruction of a go-fast vessel did not violate the defendants' rights because the vessel was not exculpatory evidence). Valverde neither identifies the potentially exculpatory evidence that he believes the Coast Guard wrongly destroyed, nor shows how such unidentified evidence would have significantly contributed to his defense.

## V. GROUND FOUR

In Ground Four, Valverde asserts that counsel was ineffective for not challenging his guilty plea. He argues that the "psychological trauma of being attacked with lethal weapons, shackled and held without legal representation, rendered [him] incapable of an informed decision as to a plea in this case." Valverde also contends that, due to his inability to understand English, he misunderstood the consequences of his decision to plead guilty. (Civ. Doc. 1 at 8)

A defendant's statements at the plea hearing "constitute a formidable barrier in any subsequent collateral proceedings" because "[s]olemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). *See also United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994) ("There is a strong presumption that the statements made during the [plea] colloquy are true."). "[W]hen a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false." *United States v. Rogers*, 848 F.2d 166, 168 (11th Cir. 1988).

Valverde's affirmations under oath during the plea hearing directly contradict his contention that his guilty plea was unknowing and involuntary. Valverde confirmed both that he understood the charge and elements of the offense to which he was pleading guilty and that he was pleading guilty because he was in fact guilty. Valverde also confirmed (1) that no one had threatened him or forced him to plead guilty, (2) that he had made the decision to plead guilty after speaking with his counsel, and (3) that no one made him any promises or assurances other than those in his plea agreement. Valverde acknowledged that an interpreter translated the indictment and plea agreement to him in Spanish and that he understood both translations. Finally, he stated that he was satisfied with counsel's advice and representation. (Crim. Doc. 55 at 11, 17–20, 33, and 51)

The record does not support Valverde's conclusory and unsupported claim that he suffered duress and was unable to understand the consequences of his guilty plea. In his affidavit, counsel states that Valverde never expressed that he was under duress and "in fact took an aggressive posture as to cooperating and giving information [about] the other conspirators." Also, counsel states that Valverde "was counseled . . . about his legal situation, charges, and options in his primary and native language of Spanish" and that, at all times, Valverde "understood what was being discussed with him . . . in his primary language which was Spanish." (Civ. Doc. 8 at Ex. 1)

Other than his own self-serving assertions, Valverde presents no argument or evidence to rebut either his affirmations under oath at the plea hearing or his

counsel's statements. Valverde establishes neither that counsel's performance was deficient nor that there is a reasonable probability that, but for counsel's performance he would not have pleaded guilty and would have proceeded to trial. *See Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

## VI.  GROUND SIX

In Ground Six Valverde asserts that counsel was ineffective for not seeking a mitigating-role reduction under Sentencing Guideline Section 3B1.2. He contends that he was not involved in either the "planning [or] organizing and, indeed, did not understand the scope and structure of the criminal activity." He further argues that he "was substantially less culpable than other participants in this criminal activity." (Civ. Doc. 1 at 11)

Counsel explains in his affidavit that Valverde was not entitled to a mitigating-role reduction based on admitted facts in the plea agreement. Rather than seeking a mitigating-role reduction, counsel instead requested a downward variance at sentencing, emphasizing that Valverde was "a small pawn[] used in a big operation" and earned "pennies on the dollar" compared to the money earned by the "major drug players." The district court imposed a sentence at the low end of the 135-to-168-month guideline range, noting that precedent supported a 135-month sentence for "mere crewmen . . . on one of these vessels." (Crim. Doc. 65 at 15–16)

Section 3B1.2 "provides a range of adjustments for a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant." U.S.S.G. § 3B1.2, comment n.3(A). The determination

whether a defendant is entitled to a mitigating-role adjustment is "heavily dependent upon the facts of the particular case." *Id.* at comment n.3(C).

Valverde fails to show that counsel's strategic decision to pursue a downward variance, rather than a role reduction, was unreasonable. Valverde admitted that "he was a knowing and willing participant in a plan to smuggle more than five kilograms of cocaine by sea." (Crim. Doc. 25 at 18) Other than his own self-serving assertions, Valverde presents no argument or evidence to support his contention that he was substantially less culpable than the other crewmembers on board the vessel.

Valverde also fails to demonstrate a reasonable probability that, but for counsel's performance he would have received a shorter sentence. "[W]hether the defendant was prejudiced by counsel's failure to request a § 3B1.2 adjustment depends on whether the district court would have granted the request, a matter only the district court can decide." *Ward v. United States*, No. 12-00269-CG, 2013 U.S. Dist. LEXIS 185289, at * 34 (S.D. Ala. Dec. 9, 2013) (citations omitted). Valverde presents no argument or evidence, and the record is devoid of any facts, to support the assertion that the district court would have granted a mitigating-role adjustment.

## VII.  CONCLUSION

Valverde's motion under Section 2255 to vacate, set aside, or correct his sentence (Civ. Doc. 1) is **DENIED**. The clerk is directed to enter a judgment against Valverde, close this case, and enter a copy of this order in the criminal action.

## CERTIFICATE OF APPEALABILITY
## AND LEAVE TO APPEAL IN FORMA PAUPERIS

Valverde is not entitled to a certificate of appealability ("COA"). A prisoner moving under Section 2255 has no absolute entitlement to appeal a district court's denial of his motion to vacate. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a COA. Section 2253(c)(2) permits issuing a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." To merit a certificate of appealability, Valverde must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir 2001). Because he fails to show that reasonable jurists would debate either the merits of the claims or the procedural issues, Valverde is entitled to neither a certificate of appealability nor an appeal *in forma pauperis*.

A certificate of appealability is **DENIED**. Leave to appeal *in forma pauperis* is **DENIED**. Valverde must obtain permission from the circuit court to appeal *in forma pauperis*.

ORDERED in Tampa, Florida, on December 2, 2020.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE